# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN EUGENE WELLS, ) | 1:10-cv-01189 LJO GSA |
| Plaintiff, ) | |
| ) | **FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. ) | |
| ) | |
| MICHAEL ASTRUE, Commissioner of ) Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## **BACKGROUND**

Plaintiff Justin Eugene Wells ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for supplemental security income benefits pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Gary S. Austin, for findings and recommendations to the District Court.

//

//

1

# FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed an application for supplemental security income benefits in August 2007, alleging disability as of August 1, 2007. AR 111-113. Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 56-60, 63-67, 69-71. ALJ Sharon L. Madsen held a hearing and subsequently issued an order denying benefits on January 5, 2010, finding Plaintiff was not disabled. AR 8-15. On April 23, 2010, the Appeals Council denied review. AR 1-4.

**Hearing Testimony**

ALJ Madsen held a hearing on November 17, 2009, in Fresno, California. Plaintiff appeared and testified; he was assisted by attorney Robert Ishikawa.[2] Vocational Expert ("VE") Cheryl Chandler also testified. AR 16-35.

Plaintiff was born April 11, 1984, and currently resides in Fresno with his grandmother. He is single, but has a five-year-old son who lives with his mother. AR 19-20. Plaintiff is not currently receiving any benefit, including food stamps. AR 21.

While he does have a driver's license, Plaintiff does not drive and it has "been a long time" since he has done so. He relies upon his girlfriend for transportation. AR 21. Plaintiff completed the eleventh grade, but has no education beyond that point. AR 21.

When asked about daily activities, Plaintiff indicated that he has difficulty with grooming and personal needs. More specifically, he cannot shave, comb his hair, or "wash [his] bottom" and requires the assistance of others due to the pain in his back. AR 21; *see also* AR 28. He does not do any household chores, does not cook, and does not use the microwave or make a sandwich. AR 22. Plaintiff does not do any shopping, attend church, or visit with friends and family in a social setting. AR 22. He spends time with his girlfriend and "friends [who] come by

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[2] It appears counsel's surname was mistakenly transcribed as "Chapala" in the transcript.

every once in a while to see" him. AR 22. He and his girlfriend sit around and watch movies. AR 22. A typical day for Plaintiff involves his lying in bed watching television, and falling asleep off and on. AR 22. He does not get up and walk around or go outside. AR 22.

Asked to describe his pain, Plaintiff indicated the pain goes across the bottom of his back, toward his hips, and to the side underneath his arm. He also feels pain in his stomach. AR 23. The pain is constant, and the cold, sitting in one place too long or trying to walk too far make it worse. AR 23; *see also* AR 30. Stretching and bending also make the pain worse. AR 23. He cannot lift his arms without feeling pain in his back. AR 28. The most comfortable position for Plaintiff is lying down. AR 23. When he was asked how many total hours in a day he lies down, Plaintiff indicated about twenty hours a day. AR 30. The pain is treated by the medication Tramadol as prescribed by a physician. AR 23. The Tramadol helps a "little bit," but also makes him dizzy. AR 30. Plaintiff sees a physician or attends a clinic about once a month. AR 23-24. He has never been sent to physical therapy because he does not have insurance. Surgery has never been mentioned. AR 24. Plaintiff does receive "MSD" from the county, receiving his medications once a month and seeing his primary physician about every ten months. AR 28.

When asked how much weight he could lift as a result of his back pain, Plaintiff indicated that it "hurts to lift a gallon of milk sometimes." AR 24. He estimated he could sit for thirty to forty minutes before the pain worsened. AR 24. Sitting puts pressure on his back and causes pain. AR 28. Plaintiff could stand for five to ten minutes before the pain worsened, and estimated he could walk a half a block. AR 25. Plaintiff uses a cane and believes it was prescribed after he was injured in 2003; he has been using the cane since that time. AR 25.

With specific regard to the injury he sustained in 2003, Plaintiff indicated he was the victim of a violent crime when he was stabbed by "a guy that was beating on a girl" and Plaintiff tried to stop him. He was stabbed with a carpet knife or box cutter about five times and received "like 150 stitches and 50 staples." AR 27. The wounds still bother him and "open up" whenever

3

they become inflamed, or he bends the wrong way. AR 27-28. When the wounds do re-open, Plaintiff "just take[s] the pain." AR 28.

Plaintiff also suffers from depression and anxiety. Specifically, he becomes anxious because he cannot get around, cannot work, and does not have a social life. AR 25. He last sought mental health treatment "last year some time," but does take Paxil as prescribed by his primary physician. AR 26. Plaintiff has attempted suicide on three previous occasions in 2008, resulting in "5150" admissions. AR 29. He indicated that his medication helps, however, when Plaintiff does not take the medication he considers suicide. AR 29. Other than the suicidal thoughts, Plaintiff feels depressed and has lost interest in everything. AR 29.

Plaintiff uses marijuana, but has stopped drinking because he is not supposed to drink while taking the prescription medication. AR 26. The marijuana "helps [him] through pain." AR 30.

When he was asked whether he could keep track of what was going on while watching television, Plaintiff responded, "[s]ometimes yeah, it depends." AR 26-27. Plaintiff indicated he does not get along well with others, and in particular, crowds make him nervous. AR 27.

VE Chandler was asked to consider a hypothetical worker of Plaintiff's age, education and work history, who could lift and carry twenty pounds occasionally and ten pounds frequently, could sit, stand or walk for six hours in an eight-hour work day, but was limited to occasional stooping and crouching. AR 31. The VE indicated such an individual could perform the full range of light unskilled work. Representative work would include assembly, DOT[3] 529.685-038, with 21,400 available positions in the state; filling machine operator, DOT 529.687-282, with 21,000 available positions in the state; or, sorting and inspection, DOT 741.687-010, with 14,800 positions available in the state. AR 31.

In a second hypothetical, VE Chandler was asked to consider the same factors as presented in the previous hypothetical, with an additional limitation to simple routine tasks. The

---

[3]"DOT" refers to the Dictionary of Occupational Titles.

4

1  VE indicated that the same jobs as those previously identified would remain available to this
2  individual as well.  AR 31.
3       In a third hypothetical, the VE was asked to assume all previous information, with an
4  additional limitation to a sit/stand option.  AR 32.  Available representative work for such an
5  individual includes cashier, DOT 211.462-010, with 12,000 available positions after a ninety
6  percent erosion to reflect the sit/stand option.  This worker could also perform unskilled
7  sedentary work such as a materials handler, DOT 529.687-138, with 2,600 available jobs, and
8  hand packing, DOT 920.687-034, with 15,000 positions available.  Both position figures reflect
9  an erosion of fifty percent.  AR 32.
10      In the fourth hypothetical, the VE was asked about a hypothetical worker limited to
11 sedentary work: sitting for six hours in an eight-hour workday, standing or walking for two hours
12 in an eight-hour work day, limited to occasional stooping, reaching overhead, and simple routine
13 tasks.  AR 32.  VE Chandler indicated the cashier position identified in the previous hypothetical
14 would be eliminated for such a worker, but the other two positions would remain available.
15 Moreover, those position figures would double because erosion is not necessary for sedentary
16 work.  Additionally, such an individual could perform the work of a production worker, DOT
17 734.687-018, with 28,000 positions available.  AR 32.
18      In a final hypothetical posed by the ALJ, the VE was asked to assume the same
19 information as presented in the fourth hypothetical, with a further limitation of the need for an
20 additional two to four thirty-minute breaks during the workday.  AR 32.  VE Chandler indicated
21 that no jobs would be available for such a worker.  AR 33.
22      VE Chandler indicated that all figures provided during her testimony can be used to
23 obtain national figures simply by multiplying the state figure by nine.  AR 32.
24      Plaintiff's attorney presented a hypothetical to the VE based upon a physician's report;
25 VE Chandler indicated that no work would be available for the hypothetical worker as described.
26 AR 33-34.

5

**Medical Record**

The entire medical record was reviewed by the Court. AR 195-309. The medical evidence will be referenced below as necessary to this Court's decision.

**ALJ's Findings**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 8-15.

More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 27, 2007. AR 10. Further, the ALJ identified lumbar strain, status post multiple stab wounds, marijuana abuse, alcohol abuse and depression as severe impairments. AR 10. Nonetheless, the ALJ determined that the severity of the Plaintiff's impairments did not meet or exceed any of the listed impairments. AR 10-11.

Based on her review of the entire record, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to lift and carry twenty pounds occasionally and ten pounds frequently, can sit, stand and walk for six hours in an eight-hour day, can occasionally stoop, crouch, and reach overhead, and is limited to simple, repetitive tasks. AR 11-14.

Next, the ALJ determined that Plaintiff has no past relevant work. AR 14. Nevertheless, based upon Plaintiff's age, education, work experience and RFC, the ALJ determined there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. Specifically, the ALJ found Plaintiff could perform the work of a production worker, machine filler operator, and sorter. AR 14-15.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v.*

6

*Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## **REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

Here, Plaintiff argues that the ALJ failed to properly evaluate the medical evidence, and thus her decision is not supported by substantial evidence or free of legal error.

//
//
//
//

7

n/a

# DISCUSSION[4]

*The ALJ's Consideration of the Medical Opinion Evidence*

Plaintiff argues that the ALJ failed to properly evaluate the medical opinions in this matter. More specifically, Plaintiff complains the ALJ erred by affording Dr. Rosalinda Serrano's opinion less weight. (Doc. 16 at 3-8.) Defendant asserts the ALJ properly evaluated the medical evidence. (Doc. 21 at 7-11.)

### 1.    Applicable Legal Standards

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984). As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506. And like the opinion

---

[4] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer v. Sullivan*, 908 F.2d at 506 n.4; *Gallant v. Sullivan*, 753 F.2d at 1456. In some cases, however, the ALJ can reject the opinion of a treating or examining physician, based in part on the testimony of a nonexamining medical advisor. *E.g., Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th Cir. 1989); *Andrews v. Shalala*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995). For example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating physician, "the ALJ did not rely on [the nonexamining physician's] testimony alone to reject the opinions of Magallanes's treating physicians . . .." *Magallanes*, 881 F.2d at 752. Rather, there was an abundance of evidence that supported the ALJ's decision: the ALJ also relied on laboratory test results, on contrary reports from examining physicians, and on testimony from the claimant that conflicted with her treating physician's opinion. *Id*. at 751-52.

### 2. ALJ's Findings

ALJ Madsen found as follows:

> In November 2007, consultative orthopedic [examiner] Dr. Serrano [] diagnosed rule out herniated disk LS spine, sprain/strain thoracic spine and lumbo-sacral spine, and history of stab wounds to the back. Dr. Serrano appears not to have seen the negative x-ray findings in November 2007 showing a normal lumbosacral spine. Dr. Serrano noted a limping gait, positive straight leg raising in seated position at 70 degrees, three healed stab wounds in the back, and pain and tenderness to L2-4 and T6-T12. Motor strength was 5/5 throughout except 4+/5 in the lower extremities proximally. Subjectively the claimant had tenderness, decreased range of motion of the lumbar spine, and reduced sensation at L5-S1. Dr. Serrano noted the claimant presented with acute pain and would not do anything, but treatment records do not show the same behavior. Although Dr. Damania found no psychological problem and did not observe the claimant to use a cane or limp, at the orthopedic examination Dr. Serrano noted the gait was limping and the claimant was unable to lie down to check straight leg raising and Dr. Serrano concluded the claimant needs a cane. At the psychological examination the claimant stated that he mows lawns, although at the orthopedic examination, he stated he uses a riding mower. Dr. Serrano concluded the claimant can stand and walk 2 hours and sit for less than six hours in an 8 hour

        day and requires a cane for ambulating long distances or on uneven terrain.  He can lift and carry 10 pounds frequently.  He can occasionally reach and balance.  He can never climb ladders or stairs, work at heights, or use a riding mower that requires the use of the legs.  This opinion has been given little weight because it appears to be based upon the subjective complaints of the claimant rather than objective findings and is inconsistent with the medical record and State agency opinion evidence.

        The State agency determined the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently, and [can] sit, stand, and/or walk 6 hours each in an 8 hour day; can occasionally climb ramps and stairs, stoop, and crouch; can frequently balance, kneel, and crawl; and can never climb ladders, ropes, or scaffolds.  This opinion has been given substantial weight because it is consistent with the overall evidence of record.

AR 13, internal citations omitted.

        ALJ Madsen did not err.  An ALJ must provide "clear and convincing" reasons for rejecting the uncontroverted opinion of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830-831 (9th Cir. 1995).  The opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Id.* (*citing Andrews v. Shalala*, 53 F.3d at 1043).  Here, Dr. Serrano's opinion is contradicted by the state agency physician, thus, it can only be rejected for specific and legitimate reasons supported by substantial evidence.

        In affording Dr. Serrano's opinion less weight than that of the state agency physician, ALJ Madsen provided specific and legitimate reasons for doing so: (1) the opinion  is inconsistent with the medical record, and (2) is it based upon Plaintiff's subjective complaints rather than the objective evidence. *Magallanes v.* Bowen, 881 F.2d at 751 (a lack of supporting clinical findings is a valid reason for rejecting a physician's opinion); *Thomas v. Barnhart,* 278 F.3d 948, 957 (9th Cir. 2002) & *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) (an ALJ may reject a physician's opinion because it was based on the claimant's discredited subjective complaints); *Morgan v. Commissioner of Social Sec. Admin*., 169 F.3d 595, 602 (9th Cir. 1999) (physician's opinion based to a large extent on claimant's own accounts of symptoms and limitations may be disregarded where those complaints have been properly discounted).

1  Plaintiff argues that, contrary to the ALJ's findings, Dr. Serrano's opinion is not
2  inconsistent with that consultative psychiatrist Shireen R. Damania.  Specifically, Plaintiff
3  contends that because Dr. Damania performed "strictly a psychiatric examination," the fact the
4  doctor did not note Plaintiff's limp or use of a cane does not amount to an inconsistency.  (Doc.
5  16 at 5.)
6  While Dr. Damania did in fact prepare a psychiatric exam, her report does mention
7  numerous physical characteristics:

> [r]evealed the claimant to be a tall, moderately obese, well-built and nourished gentleman who looked older than his stated age.  He wore a black sweatshirt and matching sweatpants, and his head was covered with the hood throughout the interview.  He wore sneakers.  There was a strong smell of cigarette smoke.  He had a neatly trimmed mustache and goatee.

11  AR 206.  It was not unreasonable for the ALJ to note Dr. Damania's lack of reference to a limp
12  or cane in light of the noted observations in the doctor's report.
13  Plaintiff further contends that Dr. Serrano's opinions are not inconsistent with the
14  medical record.  In support of this assertion, he merely references selected notations from Fresno
15  Community Regional Medical Center without providing any meaningful context or legal
16  authority in support thereof.  (Doc. 16 at 6.)
17  Nevertheless, as correctly noted by the Commissioner, for example, Dr. Serrano's
18  diagnosis of "[r]ule out herniated disk LS-spine" is contradicted by the objective radiological
19  findings of just fourteen days earlier:

> There is normal contour of the lumbosacral spine.  The vertebral bodies and disk spaces are intact.  On the oblique views, the pars interarticularis are intact and the apophyseal joints are normal in appearance.  The pedicles show no evidence of erosion.
> IMPRESSION: Normal lumbosacral spine.

23  AR 286.  Moreover, State agency physician Paul F. Frye, M.D., prepared a Physical Residual
24  Functional Capacity Assessment wherein, following a review of all evidence, he determined that
25  despite Plaintiff's back pain he was capable of lifting and carrying twenty pounds occasionally
26  and ten pounds frequently, sitting, standing or walking about six hours in an eight-hour workday,

11

limited to occasional ramps or stairs, stooping, and crouching. AR 220-221. Dr. Frye did not identify any manipulative, visual, communicative or environmental limitations. AR 221-222.[5]

To the degree there are conflicts in the medical evidence, it is the ALJ's responsibility to resolve such conflicts. *Magallanes v. Bowen*, 881 F.2d at 750. Indeed, this Court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. *Id.* In the final analysis, Plaintiff is asking this Court to adopt his interpretation over that of the ALJ. This Court will not, and cannot, do so.

The Court's review of the record supports the ALJ's findings. Plaintiff is reminded that the mere diagnosis of an impairment is not sufficient to sustain a finding of disability. *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985). In sum, ALJ Madsen's findings are supported by substantial evidence and are free of legal error.

## RECOMMENDATION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be DENIED and that JUDGMENT be entered for Defendant Michael J. Astrue and against Plaintiff Justin Eugene Wells.

These findings and recommendations will be submitted to the Honorable Lawrence J. O'Neill pursuant to the provisions of Title 28 of the United States Code section 636(b)(l). Within fifteen (15) days after being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file

---

[5] The Court notes that Plaintiff refers to Dr. Frye having "stated: 'Feel this claimant would be capable of 20/10 with stand and walk 2 hours....(Sedentary),'" however, Plaintiff's references to pages 291 and 292 of the Administrative Record for this reference are incorrect. Those pages reference a Case Analysis prepared by Carmen I. De la Rosa, M.D. Furthermore, the doctor affirmed Dr. Frye's earlier findings.

objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **September 1, 2011**     /s/ **Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE